Cynthia L. **GRIFFIN**, Plaintiff–Appellant,

v.

**CITY OF MILWAUKEE**, Robert J. Ziarnik, Frank Sepic, et al., Defendants–Appellees.

No. 95–1164.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 22, 1995.

Decided Jan. 25, 1996.

Robert J. Gingras, Wendy A. Williams, Paul A. Kinne (argued), Madison, WI, for Plaintiff–Appellant.

Grant F. Langley, Susan E. Lappen (argued), Office of City Attorney, Milwaukee, WI, for Defendants–Appellees.

Before BAUER, CUDAHY, and RIPPLE, Circuit Judges.

BAUER, Circuit Judge.

Cynthia Griffin sued the defendants for allegedly intercepting her personal telephonic and non-telephonic conversations in violation of the federal wiretapping act and analogous Wisconsin state law. 18 U.S.C. § 2520(a); Wis.Stats. § 968.31(2m). Griffin also brought a civil rights action under 42 U.S.C. § 1983 for various federal constitutional claims, including alleged violations of her rights to freedom of speech, freedom of privacy, and freedom from unreasonable searches and seizures. And more, Griffin asserted a gender discrimination claim under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, and the Fourteenth Amendment to the United States Constitution. Griffin's initial complaint included four other plaintiffs (two of Griffin's co-workers at the Milwaukee Police Department and two employee unions). Griffin filed a separate complaint alleging her gender dis-

crimination claim and litigated that action separately from the other plaintiffs. This appeal concerns only Griffin's claims. Griffin appeals the district court's order granting the defendants' motion for summary judgment. This court has jurisdiction pursuant to 28 U.S.C. § 1291. We affirm.

## I.

### Facts

This case arises out of the defendants' alleged interception of Griffin's personal telephonic and non-telephonic conversations when she worked as a telecommunicator in the Milwaukee Police Department ("MPD") Communications Operations Division ("COD") from April 1987 to June 1989. The individual defendants all held supervisory or management positions in the MPD or COD during that time. The COD receives the Department's incoming emergency calls and coordinates the dispatching of officers. A reel-to-reel taping device in the COD records all incoming emergency calls.

In April 1987, Norstan Communications ("Norstan") installed a telephone system in the MPD Police Administration Building. The telephones installed in the COD had several relevant features. Some individuals in the COD could contact other telephones in the division by using the "intercom" function. Griffin alleged that this function allowed the person initiating the intercom call to hear conversations occurring in the room where the recipient telephone was located. In addition, supervisors could monitor telephone calls made at telecommunicator and dispatcher workstation telephones by using the "silent monitor" function. Individual telecommunicators and dispatchers received no indication when supervisors used this feature, although all COD employees knew that supervisors might monitor their workstation calls for supervisory, evaluation, and training purposes. Griffin alleged that this function also allowed for monitoring of the lunchroom telephone, although COD supervisors told employees that the lunchroom telephone would not be monitored and that they should use that telephone for personal calls. The telephones at each telecommunicator and dispatcher workstation also had an "instant

recall recorder" that activated when the telephone line was engaged and could record either ten or twenty minutes of continuous conversation. Finally, Griffin contended that certain telephones in the COD possessed an "executive override" feature, which allowed a caller to override a busy signal and break into a telephone conversation. Before an override would occur, both parties to the conversation would hear a ringing tone. The defendants countered that none of the telephones in the COD were equipped with the executive override function.

Griffin offered five pieces of evidence in support of her claim that the defendants illegally used the telephone system to monitor her personal telephonic and non-telephonic conversations. First, she offered evidence that the silent monitor function was used 950 times during a nineteen-month period and that the executive override function was used 29 times during that same period. From this "extravagantly large" number, Griffin concluded that the defendants must have used the telephone system to intercept her private conversations. Second, Griffin presented her deposition testimony that Sergeant Laura Schwefel, an officer in the COD but not a defendant in this case, told Griffin that she had listened to a telecommunicator's personal telephone call. Third, Griffin proffered her deposition testimony that she heard two beeps and some breathing while she used the lunchroom telephone, which was not supposed to be monitored. Fourth, Griffin offered evidence that the instant recall recorder on a COD telephone recorded a conversation among several COD employees. Finally, Griffin offered her deposition testimony that she had seen defendant Proulx using the telephone system to monitor a non-telephonic conversation between two other telecommunicators.

## II.

### Summary Judgment

A. *Standard of Review*

 We review the grant of summary judgment *de novo,* applying the same standards as the district court and viewing the

record and all reasonable inferences to be drawn from it in the light most favorable to the non-moving party. Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. The nonmovant must articulate specific facts demonstrating that a genuine issue exists for trial. A dispute about a material fact is "genuine" only if a reasonable jury could render a verdict for the non-moving party "if the record at trial were identical to the record compiled in the summary judgment proceeding." *CSX Transp., Inc. v. Chicago and North Western Transp. Co., Inc.,* 62 F.3d 185, 188 (7th Cir.1995), *quoting Russell v. Acme–Evans Co.,* 51 F.3d 64, 70 (7th Cir.1995).

## B. *Analysis*

■ The district court concluded that the defendants had demonstrated that no genuine issue of material fact existed because of the absence of evidence supporting Griffin's statutory and constitutional claims, and that they were entitled to judgment as a matter of law. The court noted that, under Rule 56, Griffin could not rely on the pleadings but had to "set forth specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e). The court concluded that Griffin had failed to present specific evidence that the defendants intentionally and willfully intercepted her conversations, and therefore granted the defendants' motion for summary judgment as to Griffin's statutory claims. For the same reason, the district court granted summary judgment as to Griffin's constitutional claims. The defendants based their summary judgment motion on the defense of qualified immunity. The district court instead focused on the merits of Griffin's claim, reasoning that qualified immunity would not be relevant unless the evidence supported Griffin's claims. We agree with the logic of this approach, and therefore address the merits of Griffin's claims in this opinion.

Initially, Griffin offered MPD documents indicating the number of times the "executive override" and "silent monitor" functions were used within the MPD telephone system. Between January 26, 1988 and August 20, 1990, the executive override feature was activated 29 times and 950 calls were silently monitored. According to Griffin, these numbers give rise to "an inescapable and reasonable inference" that the defendants illegally intercepted calls. Such an inference is neither "inescapable" nor "reasonable." The record indicates that these numbers reflected the use of the "executive override" and "silent monitor" functions within the entire MPD telephone system, rather than within the COD itself. In light of this fact, Griffin's contention that these "astronomical" numbers lead to "an inescapable and reasonable inference" that calls were intercepted illegally is unpersuasive. Also, the defendants explained that the "executive override" feature was not part of the telephone system and that it was used only by Norstan employees who installed and maintained the system. This explanation comports with the 29 uses of the function during a nineteen-month period.

Furthermore, even if the 950 uses of the silent monitor function did indicate that the defendants intercepted telephone conversations, that number does not mean that the defendants violated the law. Although monitoring personal telephone calls may in certain circumstances violate the federal wiretapping act and analogous Wisconsin statutes, those laws include exceptions for monitoring "where one of the parties to the communication has given prior consent" to such interception. 18 U.S.C. § 2511(2)(c) and (d); Wis. Stats. 968.31(2)(b) and (c). In this case, the defendants informed COD telecommunicators and dispatchers (including Griffin) that workstation telephone calls might be monitored for training, evaluation, and supervision purposes. Indeed, Griffin testified in her deposition that she knew that her telephone conversations at her workstation could be monitored by supervisors. In addition, the defendants told employees that incoming emergency calls would be recorded. The reel-to-reel recording system was located conspicuously in a glass case in the middle of the telecommunicator and dispatcher work area. From this, we conclude that the defendants' systematic monitoring of workstation telephones occurred with Griffin's consent.

Griffin's evidence of the number of monitored calls does not give rise to any genuine issue of *material* fact as to whether the defendants illegally intercepted Griffin's personal telephone calls.

Griffin also offered a portion of her deposition testimony in which she stated that she heard two beeps and some breathing during a telephone conversation with her grandmother.[1] Griffin made the call from the lunchroom telephone, which was not supposed to be monitored and from which employees were permitted to make personal calls. (COD supervisors discouraged employees from using workstation telephones for personal calls.) This evidence and the conclusory allegations that Griffin draws from it, however, fail to raise a genuine factual issue that would warrant a trial. The mere fact that Griffin heard two beeps and some breathing during her conversation does not support any inference that the lunchroom telephone was monitored. Nor does this evidence support any inference that, if the telephone indeed were monitored, the defendants were responsible and that they did so intentionally and illegally.

Another example cited by Griffin of intentional interception of personal conversations involved a non-telephonic conversation among Griffin and two co-workers. Shortly after this conversation, Griffin used the instant recall recorder on her workstation telephone to replay an incoming call and verify an address. When she played the tape, she discovered that her conversation with the co-workers also had been recorded. From this, Griffin infers that the defendants intentionally intercepted this personal conversation. The district court concluded that this evidence did not support an inference that anyone, let alone the defendants, intentionally recorded the conversation. We agree. The defendants explained that the instant recall recorder activates whenever the telephone line is engaged. Thus, if a telephone were off the hook, the recorder might pick up conversations occurring near the workstation. Griffin's evidence, therefore, did not raise a genuine factual dispute as to her claims.

Griffin also offered her deposition testimony that she "was informed by Sergeant Schwefel that Schwefel had listened in on telephone conversations" between an employee and an outside person. The district court concluded that this testimony was inadmissible hearsay. The court further noted that the evidence failed substantively because the fact that Schwefel (who was not a defendant) intercepted personal conversations did not make it more likely that the defendants had done so. Griffin argues that the district court erred in refusing to consider Schwefel's statements. However, Griffin has waived this argument by failing to cite any legal basis to support it. Fed.R.App.P. 28(a)(6); *see United States v. Mason,* 974 F.2d 897, 901 (7th Cir.1992) (failure to support argument with case law or facts from the record waives argument on appeal); *United States v. Fazio,* 914 F.2d 950, 959 n. 15 (7th Cir. 1990) (same). For the same reason, we need not address Griffin's argument that the district court erred in granting summary judgment as to her gender discrimination claim. Even if Griffin has not waived these arguments, summary judgment nevertheless was appropriate as to both claims. The district court properly concluded that Schwefel's testimony was inadmissible hearsay that would not preclude summary judgment. Similarly, we agree with the district court that Griffin failed to raise a genuine issue of material fact as to her gender discrimination claim.

Finally, Griffin offered her testimony that defendant Proulx listened to a non-telephonic conversation between two other telecommunicators at their desks. Yet whether Proulx indeed did this to someone other than Griffin has no bearing on Griffin's case and does not raise a genuine factual dispute regarding illegal interception of *Griffin*'s conversations. *See* 18 U.S.C. § 2520(a) (civil suits limited to persons whose wire or oral communications are illegally intercepted, disclosed, or intentionally used); Wis.Stats. 968.31(2m) (civil suits limited to persons whose wire, electron-

---

1. Griffin ended the call with her grandmother and immediately complained to defendant James Proulx, the Chief Operator and a supervisor in the COD. Proulx told Griffin that the interference may have been caused by construction near the MPD building.

ic or oral communication is illegally intercepted, disclosed or used).

We agree with the district court that the evidence offered by Griffin was insufficient to avoid summary judgment as to her statutory claims. For the same reason, we conclude that the district court properly granted summary judgment as to her constitutional claims. After the defendants satisfied their burden of showing no genuine issue of material fact existed for trial, Griffin failed to respond with any evidence supporting her constitutional claims. Absent evidence that the defendants improperly intercepted her telephone calls and non-telephonic conversations, there is no basis for Griffin's Fourth Amendment claim that there was an unconstitutional search and seizure, nor is there any evidentiary foundation for her claims that the defendants violated her freedom of speech or privacy.

The district court properly concluded that there was no genuine issue of material fact as to Griffin's statutory and constitutional claims against the defendants. We affirm the grant of the defendants' motion for summary judgment.

## III.

### Production of Investigative File

 After the defendants moved for summary judgment, Griffin three times requested and received extensions of the deadline for filing her response. After the defendants refused to consent to a fourth extension, Griffin filed a motion to compel the production of the police investigative file related to this case. The four other plaintiffs joined Griffin in the four requests for extension of the deadline for responding to the defendants' summary judgment motion, as well as the motion to compel production of the investigative file. The district court conducted an *in camera* review and then denied the motion, concluding that the contents of the file did not affect the defendants' motion for summary judgment. The court also concluded that executive privilege protected the contents of the file and that therefore the file was not discoverable. Griffin contends that the district court erred in denying her mo-

tion to compel production of the investigative file. In the circumstances, however, we believe that the court acted well within its broad discretion over discovery matters. *See Garner v. Kinnear Mfg. Co.*, 37 F.3d 263, 270 (7th Cir.1994) (denial of motion to compel discovery reviewed for abuse of discretion); *see also Diak v. Dwyer, Costello & Knox, P.C.*, 33 F.3d 809, 813 (7th Cir.1994). Here, the district court had two valid reasons for denying Griffin's motion to compel: the investigative file was not relevant to the summary judgment proceedings and it was protected by executive privilege. We see no reason to disturb the district court's ruling.

## IV.

### Conclusion

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED.