**Michelle HUDSON, Plaintiff,**

v.

**KENOSHA COUNTY and Local 990, American Federation of State, County and Municipal Employees, AFL—CIO, Defendants.**

No. 97–C–1324.

United States District Court, E.D. Wisconsin.

Dec. 16, 1998.

Robert E. Sutton, Sutton & McNamara–McGraw, Milwaukee, WI, for plaintiff.

Anna M. Pepelnjak, Crivello, Carlson, Mentkowski & Steeves, Milwaukee, WI, for defendant Kenosha County.

Aaron N. Halstead, Shneidman, Myers Dowling Blumenfield Ehlke Hawks Domer, Madison, WI, for defendant American Federation.

## OPINION AND ORDER

CURRAN, District Judge.

Michelle Hudson commenced this action against her former employer, Kenosha County and Local 990, American Federation of State, County and Municipal Employees, claiming that the termination of her employment with the County violated her rights under 42 U.S.C. §§ 1981, 1983, and 1988 and Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq. Both the County and Local 990 have moved for summary judgment.

## SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Federal Rule of Civil Procedure 56(c). Substantive law identifies which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505. 2510, 91 L.Ed.2d 202 (1986). Only disputes over facts which are outcome determinative under the applicable substantive law will preclude the entry of summary judgment. *Id.* The standard for deciding whether to grant summary judgment mirrors that for deciding whether to grant judgment as a matter of law pursuant to Rule 50(a). The district court must enter judgment if, under the governing law, a reasonable fact finder could not find for the nonmoving party. *Shields Enterprises, Inc. v. First Chicago Corp.*, 975 F.2d 1290, 1294 (7th Cir.1992).

The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Roger v. Yellow Freight Systems, Inc.*, 21 F.3d 146, 148 (7th Cir. 1994). The nonmovant must then demonstrate with "concrete evidence" that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324–25, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). The court must draw all inferences in the light most favorable to the nonmovant but may grant summary judgment when the record, taken as a whole, could not leave a rational trier of fact to find for the nonmoving party. *Griffin v. City of Milwaukee*, 74 F.3d 824, 826–27 (7th Cir.1996).

### RELEVANT FACTS

In compliance with Local Rule 6.05, the movants have presented a total of 64 proposed findings of fact. The Plaintiff has contested only 4 of these facts. Local Rule 6.05(d) provides that in deciding a motion for summary judgment the court will conclude that there is no material issue as to any proposed finding of fact to which no response is set out. The following facts are derived from the Defendants' proposed findings of fact to which there were no valid objections.

On February 1, 1994, Michelle Hudson, an African American, applied for employment with Kenosha County as an economic support specialist. Hudson was informed during the interview that the position was temporary but she testified that the interviewer told her that the job would lead to a regular full-time position. Hudson and Preston White, an African American male, were both awarded the positions of Economic Support Specialists as Limited Term Employees (LTE). Both Hudson and White received benefits.

On June 21, 1995, Hudson signed a posting for a regular full-time job as an "Economic Support Specialist I" and for a job as an Accountant II. Hudson was notified that the written test for the accountant job would be offered on June 29, 1995, but, in the meantime, both Hudson and White were awarded the regular full time Economic Support Specialist I positions, although no start date was determined.

Local 990 of the American Federation of State, County and Municipal Employees represents three separate bargaining units of county government employees, one of which encompasses Courthouse and Social Services clerical positions. In June 1995, there was a collective bargaining agreement in effect between Kenosha County and Local 990, which included the County's economic support specialist positions. Under the CBA limited term or temporary employees, such as Hudson and White, were not eligible for benefits. The CBA further required that current full-time employees who posted for vacant positions be given preference over temporary employees or outside applicants who might also post or apply for such positions. Although Hudson was awarded the permanent Economic Support Specialist I position, a full-time employee in the County Assessor's Office had also posted for that position.

Hudson attended the Local 990 union meeting on June 28, 1995, and was sworn in as a member of the Union. After Hudson was sworn in, an individual named Lyn Costello asked all Union officials if they were aware of temps receiving benefits or aware of any agreements made between temps and management. The minutes reflect that everyone answered "no."

At the time of these events, there was in effect a consent award issued by arbitrator Daniel Nielsen by the terms of which the County could only utilize temporary employees in certain limited circumstances, one of which was the County's right to employ temporary employees for up to 180 calendar days during a hiring freeze. A hiring freeze was in effect when Hudson and White were given their Limited Term Employee positions. Furthermore, temporary employees could only bump other temporary employees. Shortly after Hudson was awarded the permanent position, Local 990 learned that she had been receiving fringe benefits while a Limited Term Employee and that she had been awarded a permanent position although a full-time employee had posted for it. The Union informed the County of their objection to this procedure and on July 14, 1995, Brooke Koons, the County's Personnel Director, issued a memo stating that Hudson

and White must be returned to their Limited Term Employee positions effective July 17, 1995. He further stated that unless he could strike an agreement with the Union, the two would not be entitled to benefits. Hudson and White were informed of this decision by Gerald Schroeder, the ES Manager, by memo issued that same day.

On August 1, 1995, Koons again issued a memo to Schroeder regarding the status of Hudson and White. The memo advised that he had had a series of meetings with the Executive Board of Local 990 as a result of which the Union insisted that despite how temporary positions were budgeted, the various arbitrations award and the settlement agreement on the arbitration before Arbitrator Neilsen precluded the County from having temporary employees for any longer than 180 days except for certain limited exceptions, which did not include the Hudson and White situation. It was the Union's position that Hudson and White be terminated effective on the 180 day mark but they agreed to extend the date through August 31, 1995. The memo further acknowledged that extending benefits to temporary employees was in clear violation of section 19.2 of the Collective Bargaining Agreement. Hudson's and White's benefits would also terminate as of August 31, 1995. Hudson requested that the Union file a grievance on her behalf and she met with Lauren Fox, President of Local 990, Kathy Fliess, the Vice President, and John Maglio, a staff representative with AFSCME, to discuss the situation. White also requested filing of the grievance and was present at this meeting. The matter was discussed at a meeting of Local 990 in late September 1995, and the membership voted not to grieve the matter on behalf of Hudson and White.

### DISCUSSION

 In order to succeed on a claim under Title VI, a plaintiff must prove that the defendant is engaging in racial discrimination and receiving federal financial assistance. *Fobbs v. Holy Cross Health System Corp.*, 29 F.3d 1439, 1447 (9th Cir.1994), *cert. denied*, 513 U.S. 1127, 115 S.Ct. 936, 130 L.Ed.2d 881 (1995). She must further establish that she was the intended beneficiary of the federal funding. *Simpson v. Reynolds Metals Co.*, 629 F.2d 1226 (7th Cir.1980). *See also Ahern v. Board of Education of the City of Chicago*, 133 F.3d 975 (7th Cir.1998). The Union has established that it is not the recipient of federal funding and there is no evidence in the record tending to suggest that Kenosha County has received federal funding for providing employment. The Plaintiff has failed to establish that a triable issue of fact exists as to whether either of these entities have received federal funding for a program or activity for which she was the intended beneficiary and the Defendants are thus entitled to summary judgment on this claim.

 Section 1981 of Title 42 states that "[a]ll persons within the jurisdiction of the United States shall have the same right in every state ... to make and enforce contracts ... as is enjoyed by white citizens." The right includes "the making, performance, modification, and termination of contracts and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship." 42 U.S.C. § 1981(b). A plaintiff seeking to establish a claim under section 1981 must either provide direct evidence of discriminatory intent or demonstrate such intent indirectly by the *McDonnell Douglas* burden shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under this formula the Plaintiff must first establish a *prima facie* case by showing that (1) she is a member of a protected class; (2) she either applied for a position or she performed her job satisfactorily; (3) she was subjected to an adverse employment action; and (4) similarly situated employees received more favorable treatment. *Hughes v. Brown*, 20 F.3d 745, 746 (7th Cir.1994). The burden of production then shifts to the defendant to articulate a legitimate nondiscriminatory reason for the adverse action. *Id.* If the defendant meets this burden of production, the presumption of discrimination created by the *prima facie* case evaporates and the plaintiff must demonstrate that the defendant's proffered reasons are merely a pretext for discrimination. *Id.* at 747. In her response to the Defendants' briefs, the Plaintiff merely asserts that

she has satisfied her burden with respect to the *prima facie* case. In response to the articulation of a legitimate nondiscriminatory reason for the employment action, however, the Plaintiff merely states that the Defendant has not provided evidence of an arbitration award or a consent decree. The consent award, however, can be found as Exhibit 1 to the affidavit of Adelene Robinson, which clearly provides that the County may employ temporary employees for up to 180 calendar days during a hiring freeze and further provides that temporary employees shall only have the right to bump other temporary employees. The Plaintiff has submitted an unsigned affidavit of John H. Wright, the President of the Kenosha branch of the NAACP who has attached a number of graphs which appear to set out hiring practices with respect to minorities. Although I have reviewed these documents, I have been unable to ascertain any relevance of these statistics to the case before the court. Despite the assertion in the Plaintiff's opposition to the proposed findings of fact that "[t]here is abundant evidence that Local 990's actions including the decision not to grieve was racially motivated," the Plaintiff has failed to provide the court with any of this evidence. The County and the Union were bound by a racially neutral Collective Bargaining Agreement and the decision of Kenosha County that the temporary employment must end on August 31, 1995, and the decision of the Union not to grieve this decision were based on legitimate non-discriminatory reasons. Construing the facts in favor of the Plaintiff, the court must find that no reasonable jury could find evidence that either Defendant violated section 1981.

The Plaintiff cites *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) and *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) for the proposition that it is "fundamental" that public employees have property interests in their employment and are entitled to due process before termination. This, of course, is a misstatement of the law because only employees with property rights in their employment can be deprived of those rights without adequate due process. *Flynn v. Kornwolf,*

83 F.3d 924, 926 (7th Cir.) *cert. denied,* —— U.S. ——, 117 S.Ct. 301, 136 L.Ed.2d 219 (1996) citing, among other case, *Loudermill* and *Roth.* Hudson has utterly failed to establish that the County had a practice or policy or officially sanctioned the practice of promising full-time employment to limited term employees. They thus cannot be held responsible on a *respondeat superior* basis for the statement of the individuals who advised Ms. Hudson that her job would become permanent. *See Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). She has also failed to establish that she had a constitutionally protected property interest in her employment which would entitle her to due process prior to its termination. Furthermore, there is no evidence in the record that Local 990 was acting under color of state law or that it was in collusion with the County with respect to the Plaintiff's employment. On the contrary, it appears that they were acting at arm's length with respect to the entire matter. Hudson was a temporary employee whose employment, pursuant to the Collective Bargaining Agreement and the Consent Decree, was to last for a maximum of 180 days. She has utterly failed to present any evidence that she had a protectable property interest in further employment which would have entitled her to due process prior to termination. *See Moulton v. Vigo County,* 150 F.3d 801, 804 (7th Cir.1998). Accordingly,

IT IS ORDERED that the motions of the Defendants for summary judgment ARE GRANTED.

IT IS FURTHER ORDERED that the Clerk of Court enter a final judgment in favor of the Defendants and against the Plaintiff who takes nothing.