# United States Court of Appeals
# for the Federal Circuit

---

**JVC KENWOOD CORPORATION,**
*Plaintiff-Appellant*

v.

**NERO, INC.,**
*Defendant-Appellee*

---

2014-1011

---

Appeal from the United States District Court for the Central District of California in No. 2:12-cv-03662-MRP-JC, Senior Judge Mariana R. Pfaelzer.

---

Decided: August 17, 2015

---

EVAN FINKEL, Pillsbury Winthrop Shaw Pittman LLP, Los Angeles, CA, argued for plaintiff-appellant. Also represented by JAMES CHANG.

ADRIAN MARY PRUETZ, Glaser Weil, Fink, Jacobs, Howard, Avchen & Shapiro LLP, Los Angeles, CA, argued for defendant-appellee. Also represented by ANDREW YOUNG CHOUNG, ERICA J. VAN LOON, CHARLES CHRISTIAN KOOLE.

---

Before NEWMAN, DYK, and REYNA, *Circuit Judges*.

NEWMAN, *Circuit Judge.*

JVC Kenwood Corporation ("JVC") sued Nero, Inc. and Arcsoft, Inc. for contributory and induced infringement ("indirect infringement") of certain JVC patents directed to various uses of DVD and Blu-ray optical discs. The charge of indirect infringement is based on Nero's sale of software to end users of DVD and Blu-ray discs, who allegedly directly infringe the JVC patents. The district court summarized JVC's infringement theory as follows:

> JVC's theory of infringement rests on the compliance of Nero's software with the same DVD and Blu-ray standards deemed essential to the manufacture, sale, and use of the licensed DVD and Blu-ray optical discs. This theory states that each Patent is essential to playing, copying, and recording data on an optical disc compliant with the DVD or Blu-ray standard. The Nero software must practice the Patents because the Nero software is used in conjunction with standards-compliant DVD or Blu-ray optical discs.

*JVC Kenwood Corp. v. Arcsoft, Inc.*, 966 F. Supp. 2d 1003, 1014 (C.D. Cal. 2013) ("Dist. Ct. Op.").

The district court did not accept JVC's theory. The court held, on summary judgment, that JVC is "barred from asserting claims of direct infringement against end users for use of Nero software with DVD and Blu-ray optical discs made or sold by a party whose products have been expressly released from claims of infringement by JVC with regard to the Patents." *Id.* at 1018. The court held that, absent direct infringement, Nero cannot be liable for indirect infringement. *Id.* The court alternatively held that: "End users' use of Nero software with DVD and Blu-ray optical discs licensed under the Patents is subject to the complete affirmative defense of patent

exhaustion with regard to infringement of the Patents."
*Id.*

We conclude that the district court correctly held that, on JVC's theory and proffered evidence of infringement, summary judgment of non-infringement was properly granted. However, facts material to the issue of patent exhaustion were insufficiently developed to warrant summary judgment on that alternative ground.

## DISCUSSION

Summary judgment is appropriate when, drawing all justifiable inferences in favor of the non-movant, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). We give plenary review to the district court's grant of summary judgment. *Earl v. Nielsen Media Research, Inc.*, 658 F.3d 1108, 1112 (9th Cir. 2011) (Ninth Circuit standard); *see Lexion Med., LLC v. Northgate Techs., Inc.*, 641 F.3d 1352, 1358 (Fed. Cir. 2011) (applying regional circuit standard of review).

The district court's action to reject a proffered expert declaration is reviewed on the standard of abuse of discretion. *Maffei v. N. Ins. Co. of N.Y.*, 12 F.3d 892, 897 (9th Cir. 1993); *see Anchor Wall Sys., Inc. v. Rockwood Retaining Walls, Inc.*, 340 F.3d 1298, 1313 (Fed. Cir. 2003) (applying regional circuit standard of review).

### A

### THE JVC PATENTS

Six JVC Patents are at issue, directed to optical discs and specific structures, methods, or systems used with optical discs: U.S. Patent No. 6,141,491 (the '491 Patent), No. 5,535,008 (the '008 Patent), No. 6,522,692 (the '692 Patent), No. 6,212,329 (the '329 Patent), No. 6,490,404 (the '404 Patent), and No. 6,788,881 (the '881 Patent).

JVC states that users of Nero's software-implemented systems and methods, in conjunction with DVD and Blu-ray optical discs, directly infringe relevant Patents. Thus JVC argues that Nero, as provider of the software, is liable for contributory or induced infringement.

The '008 and '491 Patents

JVC asserted claims 1, 2, and 4 of the '491 Patent and claims 1, 2, 7, and 8 of the '008 Patent. The '491 Patent is a division of the '008 Patent and both relate to "jump reproduction"–*e.g.,* fast-forwarding, fast-rewinding, etc.– through moving picture data that is stored on a disc in a coded and compressed format. The specifications of the '491 and '008 Patents state: "An object of the present invention is to provide a recording medium, a reproduction method and a reproduction system, which are suitable for jump reproducing video data coded with high efficiency by an MPEG method or the like." '008 Patent col. 6 ll. 13-26; '491 Patent col. 6 ll. 12-25.

The '491 Patent includes claims to methods for recording and reproducing moving picture data, as well as claims to optical discs containing moving picture data. For example, claim 1 of the '491 Patent is directed to an optical disc coded with moving picture data according to a specified method or format, and claim 2 is directed to the "method of recording moving picture data on a recording medium." '491 Patent col. 21 l. 54 to col. 24 l. 19. The '008 Patent claims methods for reproducing data, as well as "reproduction systems" for "outputting a plurality of data groups." '008 Patent col. 21 l. 62 to col. 24 l. 56. Only the method claims of the '008 Patent are asserted, while both product and method claims of the '491 Patent are asserted.

JVC states that when end-users use Nero software with blank optical discs to record moving picture data, they directly infringe by practicing the specified "method of recording moving picture data on a recording medium,"

claim 2 of the '491 Patent, thereby making a "recording medium on which moving picture data is recorded," as recited in claim 1. JVC Br. 33.

JVC states that Nero's accused products meet the "for reproducing data from a plurality of data groups having at least a first data group and a second data group" limitation of claim 1 of the '008 patent because the accused products enable playback of media on a disk recorded in compliance with DVD specifications. JVC states that "when the end-user then uses Nero software to reproduce (playback) the moving picture data and to fast forward (or fast reverse) through the content, the end-user directly infringes claim 4 of the '491 Patent and claims 1, 2, 7 and 8 of the ['008] Patent, all directed to a reproduction method." JVC Br. 33.

The '692 and '329 Patents

JVC asserted claim 2 of the '692 Patent and claims 3 and 6 of the '329 Patent. The '692 Patent is a division of the '329 Patent, and both Patents relate to regional and parental controls on content-bearing optical discs. The asserted claims are directed to methods of controlling whether certain kinds of content, such as a movie on an optical disc, should be decoded and played according to preconditions, *e.g.,* "R" rated content or "PG13" rated content. JVC states that when an end-user uses Nero software to perform the parental/regional control functions as recited in the claims, the end-user directly infringes the '692 and '329 Patents.

The '404 Patent

JVC asserted claim 1 of the '404 Patent. The '404 Patent is directed to the recording regions on an optical disc and a method and apparatus for editing data on a disc that is formatted in accordance with the claims. Claim 1 is directed to a rewritable optical disc comprising two recording regions on which data are recorded according to

a specified format. JVC states that when an end-user uses Nero software to record to a blank rewritable optical disc in accordance with the format set out in claim 1, the end-user directly infringes the claim.

The '881 Patent

JVC asserted claims 1 and 2 of the '881 Patent. The '881 Patent relates to editing audio data recorded on a storage medium such as a rewritable optical disc. Claim 1 is directed to a writable storage medium including a first and second storage area containing multiplexed packs of compressed audio and moving picture video data, and a third storage area containing specified additional information; as follows:

> 1. A writable storage medium comprising:
>
> a first storage area divided into a plurality of sectors having the same data capacity;
>
> a second storage area involved in the first storage area, storing a plurality of moving picture packs of moving picture data encoded by variable bit rate compression encoding and a plurality of audio packs of audio data encoded by constant bit rate compression encoding, the moving picture packs and the audio packs being multiplexed per pack and stored sequentially from a specific sector among the sectors, each pack corresponding to a unit of data transfer and containing data an amount of which is equal to the data capacity of each sector; and
>
> a third storage area involved in the first storage area but located different from the second storage area, the third storage area storing a table listing at least first information indicating whether after-recording to the audio data is allowable, second information indicating an encoding method by which the audio data has been encoded and

third information indicating the number of audio channels of the audio data.

JVC states that when an end user uses Nero software to store data to an optical disc in accordance with the claimed format, the end user directly infringes the claim "by making (creating) a writable storage medium (recorded optical disc) as recited in claim 1." JVC Br. 37.

For all six Patents, JVC states that since Nero's software customers are direct infringers, Nero is liable for induced or contributory infringement.

## B

### JVC'S THEORY OF INFRINGEMENT

JVC did not provide or proffer evidence of specific direct infringement by any end user, but instead advanced a standards-compliance theory of infringement; *viz.*, that use of Nero's software for the purposes described in any of the Patents, and in compliance with the DVD and Blu-ray industry standards, directly infringes the relevant Patent. JVC's Complaint states:

> ¶9. . . . . The right to relief is asserted, in part, on the defendants' common compliance with industry standard specifications, known generally as the "DVD Specification" and the "BD Specification." This is not an action where joinder is based solely on allegations that multiple parties have infringed the patents in suit. In addition, it is based on the allegation that compliance with an industry standard, which is co-terminous with asserted patent claim language, has commonly occurred among infringers.

First Am. Compl. at 5, ECF 32.

JVC stresses that its theory of infringement is that end users of Nero's software, when used with DVD and Blu-Ray discs, comply with the DVD and Blu-ray stand-

ards to which the JVC Patents are essential, whereby the end users "must necessarily" infringe the Patents. At the claim construction hearing JVC stated:

> We've asserted essential patents to which if a user does what the user must do with the Nero software, that use must indeed infringe the DVD specification which is called for in the patents and also—I'm sorry, complies with DVD specifications and, therefore, infringes the patents, or must comply with Blu-ray specification which then infringes the patents. And they must necessarily do so.

Nero Br. 7, quoting Claim Const. Hr'g. Tr. at 5-6, ECF 74.

The district court probed JVC's "Theory of the Case" and secured additional briefing and argument, for JVC relied on this theory to "necessarily" establish infringement. The district court summarized that, according to JVC, "When an end user uses Nero's software on that licensed disc according to the DVD6C standards specification, that end user necessarily directly infringes one or more Patents not included in the license." Dist. Ct. Op. at 1011.

The court further summarized JVC's position: "The Nero software must practice the Patents because the Nero software is used in conjunction with standards-compliant DVD or Blu-ray optical discs." *Id.* at 1014. JVC's claim charts consistently reference that Nero's software complies with relevant DVD or Blue-ray specifications, and that the Patents are included in the licensing pools for DVD and Blu-ray disc products.

The record describes two licensing pools for optical disc technology, *viz.*, the DVD Patent Licensing Group (also called DVD6C), and One Blue LLC for Blu-ray technology. JVC is a member of both groups, and the Patents in suit are included in both pools.

The pools and the standard pool license agreements received extensive exploration in the district court. For the DVD6C pool, a licensee designates the product categories for which a license is desired. The categories from which the licensee may select are: DVD-Video Players; DVD-Audio Players; DVD-ROM Drives; DVD-ROM Discs; DVD-Video Discs; DVD Audio Discs; DVD Decoders; DVD Video Recorders; DVD (Recordable Disc Drives); DVD Encoders; DVD-R Discs; DVD-RW Discs; DVD-RAM Discs; DVD Recordable Disc Cases; +R Discs; +RW Discs. Koole Decl. Ex. 73, at Art. 2 §2.1.3, Ex. 3-1, ECF 90-23.

The DVD6C license agreement grants a "non-exclusive, nontransferable license, without any sublicense right, to make, have made, use, import, offer to sell, sell and otherwise dispose of DVD Products under the DVD patents or any of their claims." *Id.* at Art. 2 §2.1.1. The license for DVD Patents "extends only to the structure, features and functions of a DVD Product used to practice those DVD Standard Specifications or +R/+RW Standard Specifications applicable to that DVD Product and for which the DVD Patents are Essential." *Id.* at Art. 2 §2.1.2. The DVD Standard Specifications are a series of documents setting forth the technical qualifications for standards-compliant products. They are published by the DVD Forum, an international association tasked with defining the DVD Specifications.

"DVD Patents" are defined as "all patents owned by members of the Group, now, or hereafter during the term of this Agreement that are Essential to make, use or sell DVD Products." *Id.* at Ex. 2-2 §1.9. The DVD6C license agreement provides that "Essential" "with respect to the definition of DVD Patents shall mean necessarily infringed when implementing the DVD Standard Specifications and/or the +R/+RW Standard Specifications or claiming technologies for which there is no realistic alternative in implementing the DVD Standard Specifications and/or the +R/+RW Standard Specifications." *Id.* at Ex.

2-2 §1.16. The agreement further provides that "[t]he license conferred . . . covers only the DVD Products select-ed . . . and does not cover any other DVD Products." *Id.* at Art. 2 §2.1.3.

The One Blue patent licensing arrangement is simi-lar. One-Blue licenses can be obtained for specific catego-ries of Blu-ray products, including patents that are "Technically Essential" or "Commercially Essential." "Technically Essential Patents" is defined as those pa-tents "containing one or more claims that is/are necessari-ly infringed in an implementation of the relevant BD-R/RE Disc Standards." Koole Decl. Ex 75, at 10, ECF 90-25. "Commercially Essential Patents" is defined as those patents "that contain[] one or more claims that is/are necessary as a practical matter on the basis that there are no economically viable substitutes to implement the relevant BD-R/RE Disc Standards." *Id.* at 6.

The One Blue agreement further provides that the li-cense "applies only to the extent the structure, features and functions of a BD Registered Product are used to practice" the applicable standards. *Id.* at 7. "BD Regis-tered Product" refers to the Blu-ray disc product covered by the applicable license agreement; *e.g.,* BD-ROM (Blu-ray read only memory) movie or data discs, BD-R and BD-RE (Blu-ray recordable and rewritable) discs, etc. The Blu-ray Disc Association is an industry consortium that establishes the Blu-ray standards specifications.

JVC points out that Nero is a licensed member of the DVD Format/Logo Licensing Corporation ("DVD FLLC"), the licensing agent for the DVD Forum, which is respon-sible for licensing the Format Books setting forth the DVD standards specifications and the DVD logo. JVC states that Nero is bound by the terms of the DVD FLLC license agreement, which requires all products manufac-tured or sold by the licensee to comply with the standards set forth in the Format Books.

In its infringement contentions, JVC alleged that since Nero's software necessarily complies with the standards specifications, end users necessarily infringe the asserted Patents, which are standards-compliant.

Reasoning from JVC's theory of infringement, the district court accepted JVC's position that the Patents' claims to software-implemented methods are embodied by the discs, stating: "If these claims are essential to the licensed DVD and Blu-ray optical discs, then those discs must embody the elements described in those claims." Dist. Ct. Op. at 1014. The court further stated, as to the only Patent that contained no claims that included an optical disc, the '008 Patent, that its novel aspects may be embodied by an optical disc "that contains or is manufactured to be capable of containing data ordered, grouped, and accessed as described in the '008 Patent." *Id.* at 1015.

On these premises, the district court held that direct infringement of the patented systems, methods, and apparatuses, as "generally alleged" by JVC, is negated by the "extensive licensing program, both as part of the DVD6C and One Blue patent pools as well as through JVC's individual licensing program." *Id.* at 1018. The court observed that licensees cannot be infringers.

JVC now argues that licensees to the DVD6C pool only receive a license to those patents related to particular products, selected by the licensee, which "practice the DVD Standard Specifications" applicable to the licensee's products, citing the DVD6C License Agreement at Art. 2 §§2.1.1 and 2.1.2. JVC Br. 13-14. Nero points out that the pool license structure was the basis for the JVC argument that infringement "must necessarily" be inferred because the Patents are included in these licensing pools, and Nero's software implements the Patents.

The district court held that infringement could not be inferred. The court stated:

> Nero has shown an extensive licensing program, both as part of the DVD6C and One Blue patent pools as well as through JVC's individual licensing program. Therefore, without specific allegations and evidence showing use of unlicensed optical discs, Nero has established a complete defense to all of JVC's allegations of infringement under the Patents.

Dist. Ct. Op. at 1018. JVC cited no "specific allegations and evidence" of unlicensed discs, and the district court correctly rejected JVC's argument that it was not its burden to make such a showing. Having failed to present any evidence of unlicensed disks, JVC argues that the district court erred in denying JVC's request for additional discovery to "collect specific information regarding customers that are using Nero software with unlicensed optical disks." JVC Opp'n Summ. J. 16, ECF No. 93 (emphasis omitted); *see also id.* at 25. Under Rule 56(d), the party requesting discovery must show, *inter alia*, that "the facts sought exist." *Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008) (setting forth the requirements of Rule 56(d)). The district court reasoned that with respect to unlicensed disks, JVC "has failed to present such evidence or even specifically allege these facts." Dist. Ct. Op. at 1009. In light of that failure, the district court did not abuse its discretion in refusing to grant additional discovery on the issue of unlicensed disks.

On JVC's premise that these Patents are essential and are directly infringed by users of Nero software, it was JVC's burden to proffer at least plausible evidence in support of its position. On the summary judgment record, the district court correctly held that:

> JVC cannot have it both ways—either the Patent is essential and licensed or JVC cannot rely on the

> standards to show infringement as it has chosen to do.

Dist. Ct. Op. at 1011.

We agree with the district court that, on JVC's theory of the case, summary judgment of non-infringement was properly granted.

## C

### PATENT EXHAUSTION

The district court alternatively relied on patent exhaustion, holding that the conditions for exhaustion, as set forth by the Supreme Court in *Quanta Computer, Inc. v. LG Electronics, Inc.*, 553 U.S. 617 (2008), were met on JVC's theory of infringement. The district court concluded that the "use of Nero software with DVD and Blu-ray optical discs licensed under the Patents is subject to the complete affirmative defense of patent exhaustion with regard to infringement of the Patents." Dist. Ct. Op. at 1018.

We conclude that the summary judgment record does not clearly establish the conditions for patent exhaustion, for it is silent as to some essential aspects. As the Court explained: "Exhaustion is triggered only by a sale authorized by the patent holder," 553 U.S. at 636, whereby if the thing that is sold "substantially embodies" patented subject matter owned by the entity that authorized the sale, then the patent is exhausted as to the thing sold. *Id.* at 638. "Substantial embodiment" is established if (1) the only reasonable and intended use of the article is to practice the allegedly exhausted patent; and (2) the article embodies the essential or inventive features of the allegedly exhausted patent. *See id.* at 631; *LifeScan Scotland, Ltd. v. Shasta Techs., LLC*, 734 F.3d 1361, 1368-70 (Fed. Cir. 2013). The Court in *Quanta* explained that, to determine whether the article sold has a reasonable and intended use that does not practice the patent,

"the features partially practicing the patent are what must have an alternative use." *Quanta*, 553 U.S. at 632 n.6.

JVC argued, and the district court found, that the intended use of DVD and Blu-ray optical discs is to "play, copy, and record data in conformance with the DVD and Blu-ray standards specifications." Dist. Ct. Op. at 1013. The court concluded that since the optical discs comply with the standards, and their use complies with the standards to which JVC alleges its asserted Patents are essential, the asserted Patents are exhausted. The district court observed:

> As in *Quanta*, "here, [JVC] has suggested no reasonable use for the [licensed DVD and Blu-ray optical discs] other than . . . practice[ing] the [JVC] ***Patents.***" . . . In addition, the only reasonable and intended use of an optical disc, licensed under standards-essential patents must be to practice those patents because there is no alternative use.

*Id.* (alteration and emphasis in original) (quoting *Quanta*, 553 U.S. at 632).

JVC argues that it was not established that the discs sold to Nero's customers were licensed, and that it was not established that the licensed aspects of the '491, '404, and '881 Patents are essential to all uses of the DVD6C or One Blue discs. JVC states that users of the Nero software could have been using unlicensed discs, and that the sale of unlicensed discs would not trigger exhaustion of even "standards essential" software patents. The district court remarked that JVC provided no support for the existence of unlicensed manufacturers of unlicensed standards-compliant discs, and correctly rejected JVC's argument that it did not bear the burden of coming forward with such evidence.

JVC states that Nero's software, not the disc sellers or users, practices the Patents, and thus that patent exhaustion does not apply. JVC does not resolve the contradiction on which the district court focused, that if the Patents represent a "substantial embodiment" of the optical discs as sold—as JVC argued in support of infringement—then the Patents are exhausted on sale of the discs. However, in arguing that the district court improperly applied the criteria of patent exhaustion, JVC also negated its own theory of infringement—as the district court recognized.

On the sketchy record, contradictory arguments, and undeveloped facts before us, we decline to expand the theory of patent exhaustion to reach this case. "Patent exhaustion is a judicially fashioned doctrine without a specific source in congressionally enacted text stating the terms of this limitation on patent rights." *Helferich Patent Licensing, LLC v. New York Times Co.*, 778 F.3d 1293, 1305 (Fed. Cir. 2015).

On application of the principle of exhaustion as set forth in *Quanta*, the threshold criterion is that the product whose sale is suggested to exhaust the patent must have originated from or through the patentee; the record of this case does not so establish. *See Quanta*, 553 U.S. at 636 ("Exhaustion is triggered only by a sale authorized by the patent holder.").

In this case, where the district court clearly and effectively determined that infringement had not been shown on JVC's theory and argument of the case, we affirm on that ground. Thus we vacate the district court's ruling with respect to patent exhaustion.

D

MOTIONS TO STRIKE DECLARATIONS

In responding to Nero's motion for summary judgment, JVC submitted the declarations of technical expert

Dr. Faramarz Azadegan, JVC employee Tetsuro Fuse, and attorney James Chang. The district court granted Nero's motion to strike the declarations. JVC states that the district court abused its discretion, and that these Declarations provide any missing support for JVC's position.

Dr. Azadegan declared that standards-compliant DVD and Blu-ray optical discs have uses other than those specified and claimed in the asserted Patents. He declared that the essential features of the asserted Patents are not embodied in clean discs. The district court observed that the position presented by Dr. Azadegan is inconsistent with JVC's statements on claim construction, and that: "This hardware/software distinction that JVC now offers is exactly the distinction that JVC has argued to overcome in applying its hardware claims to Nero's software product." Dist. Ct. Op. at 1017. The court also referred to JVC's theory, fundamental to its case, that the asserted Patents are "necessarily infringed" because the claimed subject matter is "essential." The district court had accepted these positions in refusing to dismiss at the claim construction stage, and declined to accept the contrary position in response to Nero's motion for summary judgment.

With respect to the declarations of Mr. Fuse and Mr. Chang, Mr. Fuse presented statistical reports of the worldwide licensing of the Patents, and Mr. Chang provided website information "purporting" to list parties and terms of the patent pool licenses. The district court rejected these declarations as irrelevant and as inadmissible hearsay.

We discern no abuse of discretion in the court's treatment of these declarations in the context of the pleadings, the argument, and JVC's theory of the case.

CONCLUSION

On the summary judgment record, direct infringement was not established, and thus Nero was not shown to be potentially liable for indirect infringement. The district court's judgment is affirmed.

**AFFIRMED**